EDISON v. CONTINENTAL CHEMICAL CO.

(District Court, S. D. New York. November 30, 1914.)

No. 10–74.

INJUNCTION ☞128—GROUNDS—WRONGFUL USE OF NAME.

　　Complainant *held*, on the evidence, entitled to an injunction restraining defendant from using his name and picture, and a certificate over his name, alleged to have been authorized by him, on the bottles and cartons containing a medicinal compound.

　　[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. ☞128.]

In Equity. Suit by Thomas A. Edison against the Continental Chemical Company. Decree for complainant.

McCarter & English, Robert H. McCarter, and Conover English, all of Newark, N. J., for complainant.

G. W. Weiffenbach, of New York City, for defendant.

ROSE, District Judge. The complainant in this case is the well-known inventor. In 1879 he discovered or invented a preparation which he then thought would be useful as a neuralgia remedy. He made an application for a patent on it. While the application was pending he sold his rights in the invention and in the patent to be issued for it to three persons, of whom a man named McMahon was one. For some reason the patent application was abandoned at the instance, as McMahon testifies, of Edison. Defendant says that the latter agreed that, if the patent application was not prosecuted to issue, the product might be marketed under his name, with his picture upon the wrappers or cartons of the bottle in which the mixture was offered for sale, and that a certificate reading, "I certify that this compound is made according to the formula devised by myself," should appear on each bottle or its wrapper. It is not claimed that there was any written contract to this effect. There is a formal agreement to assign the invention, and an equally formal Patent Office assignment of it. Edison absolutely denies having made any other bargain than that contained in the original instrument, and in this respect I am satisfied that his testimony is accurate.

McMahon and his associates formed a New Jersey corporation to exploit the remedy. The evidence satisfied me that all the rights of

McMahon and his associates were assigned to this company in payment for its capital stock issued to them. That company was not a success. It dragged along its existence for some years, and then went into a receiver's hands. It was reorganized as a Maine corporation under a different name. That was also a failure. Shortly before it abandoned business it gave an assignment of its rights or license to use them to a Chicago man, who organized another New Jersey corporation under the name of the Edison Polyform & Manufacturing Company, which undertook to market the product as Edison's Polyform, with his picture and the certificate in question on the carton of the bottle. Edison promptly asked a New Jersey state court to enjoin all use of his name in connection with the alleged remedy. For the reasons stated in an able and conclusive opinion by Vice Chancellor Stevens, the relief he asked was granted. Edison v. Edison Polyform & Manufacturing Co., 73 N. J. Eq. 136, 67 Atl. 392.

That was in 1907, and nothing more was apparently heard of the medicine until May, 1912, when Mr. Burnstine, of counsel for the defendant, wrote Mr. Edison that his client, one Ferber, of New York, had been offered a one-third interest in the formula known as Edison's Polyform, together with the right to manufacture and sell the same with a certificate and design of trade-mark. He stated that the matter had been handed to him for investigation before closing, and he asked for any information that Mr. Edison might be disposed to give which would aid in determining the merits of the offer. He received a prompt reply that Mr. Edison denied the existence of any right to the term "Edison's Polyform," and that he would not permit the use of his name in connection with Polyform, or recommend the formula, and he was willing to litigate the question to any extent. After this explicit warning, Mr. Burnstine's client proceeded to organize the defendant, and obtained an assignment of what is alleged to be McMahon's one-third interest in consideration of 1,000 shares of stock in the defendant company. The defendant thereupon put Edison's Polyform on the market in cartons which reproduced the old picture and the alleged certificate of Edison over the fac simile of his signature. Edison promptly instituted this suit.

Unless Edison made the verbal contract alleged in the defendant's answer, the latter has not on any theory a shadow of right to do what it is doing, nor has it any unless some title remained in McMahon which he assigned to it. As already stated, I do not believe that any such contract as McMahon alleges with Edison was ever made. McMahon's testimony on the point is far too indefinite to establish that fact against Edison's direct and positive denial. I am also convinced that McMahon parted with whatever title he ever had more than a third of a century ago. He may and did have thereafter some interest in one or more of the companies which in succession unsuccessfully attempted to exploit the remedy, but that is a very different thing from having any title in the formula or trade-mark. This is, however, perhaps outside the mark. Nor is it worth while to inquire whether, if Edison had made a contract, and that was what McMahon says it was, and McMahon (until it was so assigned to the defendant) retained a one-

third interest therein, he could by assigning such one-third confer upon the defendant the rights it claims to exercise. All such questions may be put aside, because Vice Chancellor Stevens was clearly right in holding that such a contract as McMahon claims Edison made was absolutely personal to McMahon and his then associates, and is therefore not assignable.

The remedy is admittedly a compound of a number of dangerous drugs. A. may be willing to allow his name to be used for promoting the sale of such an article, provided it is manufactured and put on the market by some one in whom he has confidence. An agreement by him that B. may use his name for such a purpose does not imply any grant to the latter of the right to authorize others utterly unknown to A. to do the same thing. Complainant is entitled to a decree enjoining the defendant from calling the compound by his name, and by any name of which his forms a part, and from putting his picture or any certificate purporting to come from him on any of its packages or in any of its advertising literature, or from in any wise holding out or suggesting that he is in any wise concerned or interested in its sale. A witness whose testimony defendant itself introduced says that the remedy is worthless, except for the value that the right to use complainant's worldwide reputation in advertising may give to it. Complainant no longer believes that the remedy is useful, or likely to accomplish the purposes for which it was intended. There is no sufficient evidence in the case that that which defendant is putting out is really compounded according to the original formula. If it is using that formula, it doubtless may have a right to say so. In view of the improper use it has already attempted to make of the complainant's name, it should not be allowed even to say that much, or say he was the inventor, unless that statement is accompanied with the further explanation that the complainant now thinks that it is without merit. Such latter statement must in every case appear in immediate connection with the formula and be as conspicuously displayed.

A decree may be drawn up in accordance with the views herein expressed.